Filed 4/10/13  P. v. Lee CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ANDRE SHAMONE LEE,<br><br>     Defendant and Appellant. | D062096<br><br><br><br>(Super. Ct. No. SCS251030) |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed with directions.

I.

INTRODUCTION

On April 3, 2012, Andre Shamone Lee pled guilty to one count of domestic violence with corporal injury (Pen. Code, § 273.5, subd. (a))[1] (count 1), and admitted having suffered a prior strike conviction within the meaning of section 667, subdivisions

---

1    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

(b) through (i), and section 668. That same day, the trial court sentenced Lee to a stipulated sentence of six years in state prison. The trial court awarded Lee a total of 313 days of custody credits, including 209 days of actual custody credits, and 104 days of conduct credits. The trial court also imposed a restitution fine in the amount of $240, and imposed and stayed a parole revocation restitution fine in the same amount.

On appeal, Lee contends that the trial court violated the ex post facto clauses of the state and federal constitutions in imposing the restitution and parole revocation restitution fines. Lee also claims that he is entitled to additional conduct credits for jail time served after October 1, 2011, pursuant to an amendment to section 4019. We reject Lee's claims and affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Lee pled guilty to one count of willfully and unlawfully inflicting corporal injury upon his live-in girlfriend (§ 273.5) (count 1). The offense occurred on or about August 23, 2011.

At sentencing, the trial court imposed a stipulated six-year sentence, as follows:

"On count 1 you will be sentenced to the mid-term of three years in state prison, which is double[d] because of the strike to six years."

The court also awarded custody credits, and imposed a restitution fine and a parole revocation restitution fine, as follows:

"Your credits . . . are 209 actual, 104 [section] 2933 [, subdivision] (e)(3) credits for total credits of 313 days. [¶] There [is] a restitution fine of $240, [and] an additional restitution fine of $240 stayed pending successful completion of parole . . . ."

2

DISCUSSION

A.     *The trial court did not violate the ex post facto clause of either the state or federal constitution by imposing a $240 restitution fee and imposing and staying a parole revocation restitution fine in the same amount*

Lee claims that the trial court violated the ex post facto clauses of the state and federal constitutions by imposing a $240 restitution fee and imposing and staying a $240 parole revocation restitution fine in the same amount.

1.     *Governing law*

a.     *Ex post facto principles*

The United States Constitution bars the passage of ex post facto laws by state governments (U.S. Const., art. I, § 10, cl. 1).  The California Constitution, article I, section 9 also bars the Legislature from enacting ex post facto laws.  The ex post facto analysis is the same under both Constitutions.  (See *In re Vicks* (2013) 56 Cal.4th 274.)

"A statute violates the ex post facto clause[s] when, on its face or as applied, it retroactively ' "increase[s] the punishment for criminal acts." '  Thus[,] the prohibition on ex post facto laws prevents the government from changing the punishment for a criminal act after the act has been performed." (*People v. Callejas* (2000)  85 Cal.App.4th 667, 670 (*Callejas*), fns. omitted.)  In *Callejas*, the Court of Appeal noted, "[C]ourts have consistently held restitution fines qualify as 'punishment' for purposes of the ex post facto clause." (*Ibid.*)

b.      *The applicable fines at the time of the offense*

At the time of Lee's commission of the August 23, 2011 offense, former section 1202.4 provided:

> "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.
>
> "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . ."   (Stats. 2011, ch. 45, § 1.)

At the time of the offense, former section 1202.45 provided:

> "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. . . ."  (Stats. 2007, ch. 302, § 15.)

Prior to the time of Lee's sentencing, the Legislature amended section 1202.4, subdivision (b)(1) to provide in relevant part, "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, [but] shall not be less than *two hundred forty dollars ($240)* starting on January 1, 2012 . . . ." (Stats. 2011, ch. 358, § 1, italics added.)  Section 1202.45 remained the same in all material respects.

4

2. *Application*

We assume for purposes of this decision that the ex post facto clauses of the state and federal constitutions prohibit a trial court from imposing fines pursuant to sections 1202.4 or 1202.45 that are greater than those authorized pursuant to the applicable statute at the time of the defendant's commission of the offense as to which the fine is imposed.[2] However, in imposing a $240 restitution fine and a $240 parole revocation restitution fine, the trial court imposed fines that are well within the range of fines authorized at the time of the Lee's commission of the August 23, 2011 offense. (See former § 1202.4, subd. (b)(1) [authorizing a fine of "not less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000)"]; former § 1202.45 [authorizing the imposition of a parole revocation fine in the "same amount" as the fine imposed pursuant to section 1202.4, subd. (b)(1)].)

Although Lee is correct that the trial court imposed a $240 restitution fine—an amount equal to the new minimum fine under the amended version of section 1202.4, subdivision (b)(1), there is nothing in the record to support Lee's contention that the trial court imposed the $240 restitution fine "pursuant to the most recent version of Penal Code section 1202.4." The trial court merely imposed a $240 restitution fine, without comment. Because the $240 restitution fine was authorized by the statute that was in effect at the time of Lee's commission of the offense (former § 1202.4, subd. (b)(1)), and

---

[2]     The People do not contend otherwise in their brief.

5

there is nothing in the record indicating that the trial court imposed the fine pursuant to the amended version of the statute, Lee's ex post facto claim fails.

B.    *Lee is not entitled to additional conduct credits for jail time served after October 1, 2011*

Lee claims that he is entitled to additional conduct credits for jail time served after October 1, 2011, pursuant to an amendment to section 4019.

1.    *Relevant factual and procedural background*

Lee committed the offense on or about August 23, 2011. Prior to sentencing, Lee served 209 days in local custody. On April 3, 2012, Lee pled guilty to count 1 and admitted to having suffered a prior strike. That same day, the trial court sentenced Lee to state prison.

2.    *Relevant law*

a.    *The statutory scheme applicable at the time of Lee's commission of the offense*

At the time of Lee's commission of the offense, former section 4019 provided for various presentence conduct credits that a prisoner could earn while awaiting sentencing. The statute provided in relevant part:

> "(f) It is the intent of the Legislature that if all days are earned under this section, a term of *six* days will be deemed to have been served for every *four* days spent in actual custody." (Italics added.) (Stats. 2010, ch. 426, § 2.)[3]

---

[3]    Although at the time of Lee's commission of the offense, certain defendants could earn enhanced presentence custody conduct credits while in custody in local jails (former § 2933, subd. (e)), it is undisputed that Lee is not eligible for such credits because he has suffered a prior strike conviction. (See former § 2933, subd, (e)(3) ["Section 4019, and not this subdivision, shall apply if the prisoner . . . has a prior conviction for a serious

6

b.   *The amended statutory scheme*

Operative October 1, 2011, the Legislature amended section 4019 to increase the rate at which conduct credits could be earned.  The amended statute provides in relevant part:

> "(f) It is the intent of the Legislature that if all days are earned under this section, a term of *four* days will be deemed to have been served for every *two* days spent in actual custody.
>
> "[¶] . . . . [¶]
>
> "(h) The changes to this section enacted by the act [Stats. 2011, ch. 15] that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.  (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35.)

3.   *Lee is not entitled to additional conduct credits pursuant to the text of section 4019*

Lee contends that he is entitled to conduct credits at the enhanced rate under the amended version of section 4019, for all of the days he served in custody after October 1, 2011.  Lee suggests that the second sentence of section 4019, subdivision (h) implies that credits earned by *all* prisoners after October 1, 2011 are to be calculated at the enhanced rate.  We are not persuaded.

Under the version of section 4019 that was in effect at the time Lee committed his offenses (Aug. 23, 2011), a prisoner confined in a county jail prior to sentencing who earned all possible conduct credits was entitled to credit for *six* days for every *four* days

felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5"].) (Stats. 2010, ch. 426, § 1.)

7

spent in actual custody.  (Former § 4019, subd. (f).)  By amendments that became operative October 1, 2011, the amount of credit for such prisoners was increased to *four* days for every *two* days spent in actual custody.  (*Ibid.*)  However, the amended statutes provide that the enhanced credits "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . *for a crime committed on or after October 1, 2011.*" (§ 4019, subd. (h), italics added.)  Thus, "[t]his favorable change in the law does not benefit [Lee] because it expressly applies only to prisoners who are confined to a local custodial facility '*for a crime committed on or after October 1, 2011.*'  [Citation.]" (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.)

Recent decisions of the Court of Appeal confirm that defendants like Lee, who committed their crimes before October 1, 2011 but were in presentence custody after that date, are not entitled to receive credits at the increased rate prescribed by the current version of section 4019.  The Fifth District court held that in enacting subdivision (h) of section 4019, "the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011.  [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits."  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553 (*Ellis*).)  Following *Ellis,* and contrary to Lee's interpretation of the statute, Division Three of this court "read the second sentence [of section 4019, subdivision (h)] as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52 (*Rajanayagam*).)

8

We agree with these holdings and reject Lee's claim that he is entitled to conduct credits at the increased rate contained in the amended version of section 4019 for the time he spent in county jail after October 1, 2011.

4. *The equal protection clauses of the state and federal constitutions do not require that Lee receive additional conduct credits pursuant to section 4019*

Lee also argues that failing to apply the current version of section 4019 for days served after October 1, 2011, violates his right to "the equal protection of the laws." (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a).)

The United States Supreme Court has held that the Fourteenth Amendment "does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505.) The California Supreme Court similarly has held that applying a statutory change prospectively only does not violate equal protection guaranties. (See, e.g., *People v. Floyd* (2003) 31 Cal.4th 179, 188–191 [rejecting equal protection challenge to prospective-only application of proposition that lessened punishment for offense].)

Relying in part on this line of cases, California appellate courts have held that awarding conduct credits at different rates to defendants in presentence custody on or after October 1, 2011, based on whether they committed their offenses before that date or on or after that date, does not violate their equal protection rights. (*Rajanayagam, supra,* 211 Cal.App.4th at p. 55; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 398 (*Kennedy*).) The *Rajanayagam* court reasoned in part:

9

"[T]he Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. [Citation.] Under the very deferential rational relationship test,[4] we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam, supra,* at pp. 55-56.)

We agree with the *Rajanayagam* court that applying the current version of section 4019 only to defendants who committed offenses on or after October 1, 2011, "bear[s] a rational relationship to cost savings." (*Rajanayagam, supra,* 211 Cal.App.4th at p. 55.) We also agree with the *Kennedy* court's observation that there is "nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*Kennedy, supra,* 209 Cal.App.4th at p. 399.) We therefore reject Lee's equal protection challenge to the prospective-only application of the most recent amendments to section 4019.

---

4     Contrary to Lee's contention that the "strict scrutiny" standard applies in this context, California courts have concluded that the rational relationship test applies. (*Rajanayagam, supra,* 211 Cal.App.4th at p. 54; *Kennedy*, *supra*, 209 Cal.App.4th at p. 397.)

C.    *The abstract of judgment shall be amended to properly state the trial court's sentence on count 1*

The trial court sentenced Lee to a stipulated term of six years on count 1, consisting of the mid-term of three years, doubled on account of Lee's prior strike conviction.  Lee notes that the abstract of judgment does not reflect the court's imposition of the mid-term sentence and requests that an amended abstract be prepared.  The People have no objection to Lee's request.

Accordingly, the abstract of judgment should be amended to reflect the imposition of a mid-term sentence on count 1, doubled due to the strike prior.

## IV.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment as described in part III.C., *ante*, and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                                                        AARON, J.

WE CONCUR:

            McDONALD, Acting P. J.

            O'ROURKE, J.

11